case number 24-5859 USA vs. Amador Guerrero argument not to exceed 15 minutes per side. Ms. Berente you may proceed for the appellant. May it please the court good afternoon Casey Berente on behalf of the appellant I'd like another three minutes for The government has provided this court with the interrogation footage of Mr. Guerrero. I would like to direct this court to just 10 minutes into that footage where we see the agent pull out his DEA issue card with both the Miranda rights translated in English and Spanish on either side but instead of reading from this card. You're talking about the the interrogation at the office not at home? Correct your honor. Thank you. Instead of reading directly from this card or reaching the arm's length distance to allow Mr. Guerrero to read from the card the agent tucks it back into his wallet and then gives his own clip version of the Miranda warnings. This isn't a case where the law enforcement didn't have the time or resources to ensure that the accused understood and was reasonably apprised of their rights in order to intelligently waive them. So is it your position he should have read it verbatim? I think that if if there was ever a case for an officer to read it verbatim it was this case. He had already been subjected to interrogation without warnings at this point twice at his home and then and the beginning of that DEA interview or interrogation he was not warned until 10 minutes into it and at that point they had already asked him the names and locations of his family members which agents believed were part of the drug trafficking organization that he was a part of. They also had asked him if he was a citizen by asking him if he had a social security card. These are not admin questions. These are investigative questions that require Miranda warnings. Do they go to an element of a crime? They they go to us your honor they do go to a separate crime. They go to either his admission that these family members are in specific places that officers are aware of or have information that they are part of the drug trafficking organization with him. But that question wasn't asked was it? At that point whether or not the family members were part of the drug trafficking. I hear you saying that well they thought that they were part of the drug trafficking organization but they didn't ask any questions about them being part of the drug trafficking organization correct? Not directly to him your honor but they did ask about his citizenship and then they did follow up on his citizenship after he was warned. So there was an overlap between these unwarned statements and then these warned statements too and whether or not your citizen in this country can end up acquiring extra charges or additional charges. This later confession was not related to that type of alleged crime was it? It was related to drug trafficking right? Correct your honor. Doesn't Siebert, I read Siebert to say that you have to have some connection between what the pre Miranda statements were to what the confession was after the Miranda warning is given. Is that not how you read Siebert? Your honor I read Siebert as a multitude of factors that help us determine whether or not the individual in custody or the accused has an effective choice or genuine choice to decide whether or not to waive their rights or if they believe that depending on all these factors this is just a part of one sequence of events or one sequence of questioning. Well but isn't there a and I use this word loosely but isn't there kind of a trigger for whether or not Siebert even applies and that being that there had to have been some statement by the suspect prior to the Mirandization that after they've been Mirandized they repeat. In other words they said something incriminating before they were ever Mirandized and then they get Mirandized and then they go back over that. Correct your honor that did happen here but I also believe. Well wait wait so where what happened on the pre Mirandized questioning that was the trigger? Correct your honor they asked him about the firearms that were found in his home. He wasn't charged with the firearms that were in his home was he? He was not but we are asking that's a backward looking analysis at that time he was not aware that he would not be charged with the firearms found in his home so from the accused perspective he's at this point has already gave these incriminating statements he's already led them to evidence that could be used against them and that he likely believes will be used against them. I'm kind of in the same position I'm struggling because I know with this is a little bit different context than Siebert I mean we know that because there was not a confession before midstream Mirandizing and then back to the same thing so in follow up on Judge Davis's I'm wondering if you can just tell us with a little more specificity what is it in the pre Miranda group of questions that is the actual nexus between the defendant's statements before Mirandizing and his later confession after receiving the warning? I think that we can look at just his follow-up or the agent's follow-up to the firearms in his home and him admitting again to the possession. Well then give me we've got that you know that kind of discussion we know that in the home he asked when they were getting his clothes they asked him are there any weapons they were in his bedroom and he said yes there are two pistols in my closet so we know that was asked but we know that none of that was prosecuted so the only things that we're interested here are the at the DEA office pre Miranda and post Miranda and we have generally the list of those questions stated what particularly in those questions gives us that nexus to what the later questions were that resulted in the concession you know we've got just as background you've got the Bobby Dixon Bobby Bobby versus Dixon case which looks at that and says no there's just no connection so how do you overcome Dixon and put yourself into Siebert in this case? Your Honor I understand what you're asking I think that under these circumstances it doesn't matter what we have here is we have these pre-warn or unwarned statements that were given and then we have an ineffective Miranda warning so on top of the already constitutional violations that had occurred we have the agents not giving effective warning in order for Mr. Guerrero to actually intelligently waive those rights okay so whether I understand that argument let's assume before you go to that argument that the Miranda warnings were adequate so if they were adequate what is the relationship between the first set of questions and the last set of questions that would throw you into Siebert? Your Honor the relationship is the evidence right acquired so the evidence is the firearms that are related to this drug trafficking organization and then to the warn statements would be the follow-up of the connection of these firearms to the drug trafficking so this is again goes to whether or not Mr. Guerrero had a legitimate choice of knowing that his prior statements would not be used against him by these same officers who had already taken these incriminating statements and exploited them against them and the warn part of the questioning. So when you say used against him you mean solely with respect to what happened on that day because the government never introduced any of this at trial right? Correct Your Honor. Doesn't the fact that this wasn't used against him for purposes of his conviction really kind of hamstring you and saying that there is a constitutional violation that's actionable as to his conviction here? Your Honor I think that it's better to be viewed in the context of the ineffectiveness of his Miranda warning that was given by the agents. We had these unworn statements and then we have the follow-up of questions that were related to the unworn statements or information that are evidence that agents had gathered prior to warning Mr. Guerrero and then we have these ineffective Miranda warnings that do not inform Mr. Guerrero of when his right to counsel attached. Well if you have ineffective Miranda warnings then aren't we effectively in a no Mirandizing occurred and what do you need Siebert for? All you need is there was ineffective Mirandizing and everything that followed it is no good right? Correct Your Honor. Yes I hear I was just getting at the context of he has already been in a situation where he had gave incriminating statements and then on top of those incriminating statements he was given an ineffective Miranda warning and so he really had no genuine choice of whether or not the ineffective Miranda warnings could reasonably apprise as the district court found him of his Miranda rights. There is a difference here between the verbiage used when you have this conduct that has already occurred. No question it is a difference not to say you have a right to counsel before they start the questioning and you have a right to counsel during the questioning. There's no issue about that. I'm struggling if we are only in a failure to Mirandize world or we are in a Siebert world and it sounds to me like we are just in a failure to Mirandize and my problem with that is I was trying to follow up on if in fact we decide it was adequate Mirandizing what do you have that will place you into Siebert that is an actual nexus between those and what he ultimately admitted in the post Mirandizing questioning. Your Honor I I think I what I failed to grasp is needing or requiring the nexus between what was followed up on is just whether or not there is overlap between the pre-warn statements and the warn statements whether or not officers continue to treat the two as the same and I think here that's what we... So your position is as long as they talked about something that was the same topic in both halves there's there's the overlap is that what you're saying and I'm reading it as or at least I was reading it I'll have to go back and look but I was looking at it as you have to actually have something that goes towards incriminating the person for the crimes for which they were convicted in the first half you can't it's not a just you can't just talk about the weather in the first half and talk about the weather in the second half and that's enough have an overlap. You like I was stating before it still has to be some incriminating statement I was followed up on before but the incriminating statement you're saying goes to a crime that he wasn't charged with. Right but the CBER analysis doesn't look at that what happens after it looks at what happens during the the events that occurred and at that point Mr. Burrow was not informed that the firearms that were found or his citizenship would not be used against him and both of those things were followed up on in the warned part of the interrogation I see that my time has run out. Okay well you have your rebuttal. Thank you. Good afternoon may it please the court Emily Petro for the United States. I'd like to begin with a question that Judge Davis asked regarding the specific statements specific questions that were asked at the DEA of Mr. Gros prior to his Miranda warning. Counsel had characterized those statements as questions about whether Mr. Guerrero was a citizen and questions regarding essentially the names and locations of family members for the purpose of their association with the drug trafficking organization. Judge Davis as your honor pointed out the the wording here is important because Mr. Guerrero wasn't asked the names and locations of his family members what drug trafficking activities they're involved in what involvement they have in this case. He was asked generally speaking do you have brothers and sisters how many their rough age and their rough location. Agents didn't follow up on addresses or other information regarding specifics or any ties to drug trafficking activity and when they asked about his biographical information such as his I think it was his date of birth the spelling of his name his address they also asked whether he had a social security number. There was no follow-up. They didn't ask what his social security number was correct they asked him if he had a social security number. Yes your honor that's right I think that was the exact. Your opposing counsel suggests that that's a question that addresses perhaps an illegality in immigration laws. I understand and I think that that would be a stronger argument had there been any follow-up there. So when his response was no that he didn't have a social and they moved on essentially that's our position is that that's part of the administrative questioning that they had been asking all the way up into that point. Had they said oh you don't have a social security number well are you a citizen what's the status of your existence here the United States that would certainly move into a different category and the reason this is important is because had those questions been oriented in the way that they were just suggested that would not only move us more into the territory of triggering Miranda but it would also move us more into coercive territory which is the ultimate question when it comes to the the cyber analysis and we do argue too many two primary points in response to the the primary arguments made by counsel about Mr. Guerrero's statements and first it is as your honors suggested that this really isn't a true Miranda in the middle case that necessitates a cyber analysis. To be sure this court's adoption of the plurality factors in Ray 1 is binding on this issue but that's on the issue of how to analyze mainstream Miranda warnings not whether that is an applicable analysis to do in this case. As we argue Miranda was not triggered by the initial interactions with the agents here and we've offered a few reasons as to why that is including the officer safety exception with regard to the question that was asked about the closet at the house and also agents didn't exploit any unwarned confession to obtain a second confession from Mr. Guerrero after the Miranda warning so there also was no question first tactic or protocol that was in place here as you have in CYBIRT and we're simply dealing with a different type of case. Furthermore as this court pointed out in the... Say this CYBIRT or CYBIRT does not apply here what how do you respond to the argument that this was not an adequate Miranda warning because I guess it talked he was told that he had it right to counsel what during the questioning but he didn't have the it said that he could have it before the questioning. That's right your honor and so yes. How do you address that deficiency? We would argue that it's kind of as the I believe the wording of the trial court the district court was that it's essentially a kind of a flip or a mirror image of what you have in the Clayton case where in that case you had before and not during and that here the agents use of the word you have a right to the assistance of an attorney during the interview. But in Clayton so you said you had it right before presumably wouldn't that encompass during because obviously if the counsel shows up before the counsel will be there the whole time as opposed to during? Yes that's right your honor and as the the court found in Clayton just as important as what was said is the lack of any limiting language there and so here just the same if he's entitled to have the presence of counsel during the interview then I understand that that Mr. Grose counsel. I'm thinking temporarily if you have the counsel show up before then the counsel will be there during because you're already there but if your counselor is just showing up during there's no guarantee they're going to show up before. I understand I push back on that. So I guess that's that's my uneasiness with taking you Clayton as controlling here. I hear you and I'd push back on that just a little bit in that well may I take a step back. Sure. In that the Miranda warnings themselves there is no particular formula in which they have to be given nor do they have to be read from a card. The question is whether the essential rights are reasonably conveyed to the defendant and here the use of the word during suggests if you do a common-sense reading that you have the right to have counsel present during the interview would mean that from the moment the first question is asked there doesn't have to be an answer because the interview has started and your counsel is there so you could at that point consult with counsel you could consult with counsel presumably from the moment everybody comes and sits down in the room. That's the Florida versus Powell right if that's the if that's the Florida versus Powell case then we know that you could say if it said if it was said before you started questioning then it just continues but Judge Bush's question is more significant to this case because the question in Powell the key right was clear but the key right here I'm concerned about because he was told after he had spoken that he had a right to counsel during questioning he was not told early on you have a right to counsel before questioning and why doesn't that make a difference to whatever he told the police during the time at the house even though that was not prosecuted and then during the time before he was Miranda eyes when he was unaware of his right to say I want to talk to an attorney before I talk to you understand your honor and I think the government's position on this is that the interactions at the house and prior to the Miranda warning didn't themselves didn't trigger Miranda but when you have the Miranda warning being read that the the use of the word during would naturally include at least the immediate before during and towards at the end help me understand this so your position is I understand that there's a distinction at the house the police officers are getting him clothes and I want to know whether he has a gun in that room in that closet where his clothes are but then when they get to the DEA office not to the court but to DEA office in a planned interview and they have him in the interview room what is it about that situation that tells you that he is not owed a Miranda warning then the initial questioning those those handful of questions at the beginning prior to the warning it's our position that those were administrative questions which is why he was being asked for instance his name his address that sort of thing and once they asked those questions asked you know how many family members you have that sort of thing then they did read the Miranda warning what's your best case to say you get a first bite at the apple anytime the police take you in to a place where they know they're going to interrogate you they get to decide what administrative questions they want to ask you before they give you your constitutional Miranda warnings we are I think it would be just the category of the questions asked so the nature of the questions asked more so than any deliberate kind of we're going to you know sneak these in or we'll do these at the front end and these after certainly that is the type of thing that you start to encounter as you move towards the Siebert fact pattern but here you have what is established in the case law in terms of the biographical questions as standard biographical questions that now and I believe it was Pacheco Lopez they did emphasize that for the booking exception first of all it's it's a fact-specific inquiry but where does it happen right because in Pacheco Lopez that was at the house and they sat him down at a table and the young man was only a detainee at the time here when you have somebody under arrest they're transported to the courthouse well DEA's in the courthouse not to the court not it was in the indictment they brought him to a separate location at the DEA's office in order to do an interrogation a separate office at that building your honor yes that the questions that they asked the limited questions on the front end were part of those administrative questions consistent with the flavor of what is set forth in Pacheco Lopez and then there is the Miranda warning and then they launch into all the questions about the drug trafficking and money laundering so I want to go back to this whole during thing and maybe we actually haven't gotten away from it because I know that you say that it's common sense that kind of this is the mirror image of Clayton and if you could have where's Clayton said before is enough because you know if someone's there before they're going to be there during then the converse and my I might be putting a little bit of words in your mouth but the converse would also be true but I have a problem with that because it seems to me that just as a practical matter if you tell someone you have a right to counsel during questioning number one there's a presumption that questioning is going to happen so you know maybe you're going to sit somebody in a room in there lawyers going to show up like right right at the beginning but if the suspect actually in here it's an actual defendant because he's been indicted if he has a right to talk to an attorney before he ever sits down with DEA if if his counsel for instance is going to tell him you've been indicted go get a rain don't say anything that's kind of been wiped out if he didn't know ahead of time that he could meet with his attorney before there was ever any questioning isn't it I think it I think it depends on the circumstances and here I would say that the the the during in the context of the the way the Miranda rights were read includes at least the immediate when they when everybody comes in the room to sit down for the interview if he elected to have counsel present and so at that point it would be immediately before right but it would still be the same rights that he has that he could exercise before or after the questioning started or they were they were in the same setting for the administrative questions and for the questioning after the Miranda yes they were in the same room sitting at the same table yes I didn't get up and go take a water break or something no sir okay and it was the same police officers yes I guess from my perspective how would I know when the questioning begins because I've already been asked some questions and you and then I'm told I have a right to counsel during the questioning I guess my first question would be I thought I was already being questioned and I'm now being told I had a right to counsel I understand your honor and the our position is that the the initial questioning to the extent that the you consider that what was at the house to be questioning or what was the initial back-and-forth that that was did not trigger Miranda and that you do have the reading of the Miranda warning followed by the interview in earnest I do see that I have about two minutes left and with the court's permission I would like to address the harmless error section as well we have discussed a number of important topics this afternoon and I do want to bring this up because from a big-picture standpoint both with respect to mr. Greer's post Miranda statement that was introduced at trial and to the search of his cell phones even if the court was to find that such evidence was erroneously admitted that any such error was harmless beyond a reasonable doubt we have any case law upholding the Miranda violation as harmless error I believe we cited that in our brief but I frankly don't have the case name off the top of my head is there is the is it the dispute over Satterwall is that is that the dispute because I know whether harmless error can be applied is clearly contested between the parties in this case so what is your basis for saying that you get to go to a harmless error analysis there I don't have the case name off the top of my head but it I believe in our brief we did set forth authority to that effect and the cases that opposing counsel sites to the alternative are cases that quite frankly present a very different set of facts one of those was a case in which somebody had a I think it was a real estate attorney appointed to them 25 days before trial and then clearly there wasn't any effective presence of counsel at trial and that I think was addressed in the context of this isn't really harmless error and so here we would add those cases let me let me just ask you that the concept here of there not being an ability to treat this as a harmless error issue is that it is a denial of counsel at a critical stage in a criminal proceeding and that's structural error right and if it's structural error then there is not a harmlessness I understand your honor and so what is your answer to why there is in fact a right to a harmless error standard that it's the courts precedent allows it to be and that there aren't those particular circumstances in this case that would warrant a different application and the critical stage analysis that is classically to be applied to the right to counsel is just not applicable in this circumstance I'd I just have to refer back to our brief on that your honor okay thank you miss Petra thank you miss Parente do you have a rebuttal I'd like to start by addressing again the ineffective warnings that were given I don't think it's fair to say that United States versus Clayton is a mere image of the warnings here especially with the language that United States versus Clayton relied upon and that was looking to Miranda and the way that they used prior to and their warnings Clayton was very clear that that language was triggering the prior to and before and that in no way was it limiting unlike here so I don't think that's a fair representation to say United States versus Clayton is a mere image to the warnings that agent Hicks gave to mr. Guerrero but just during I think we also need to take in consideration that mr. Guerrero's first language was not English and the agents were well aware of that so that's another factor to add and how ineffective this warning was is that not only was these words omitted of when this language prior or before should have been given to him so he understood the right to counsel attach as soon as he was arrested because an indictment had already been filed but also that he was struggling to even understand in the full context of everything that was being said to him and this was made clear throughout the interrogation as you can see when agents have to clarify what he what is being said this is also clear as they had to you know pay certified linguists to translate the majority of his communications during the investigation and they admitted that they were aware that English was his second language he spoke heavily accident and can I ask you about the harmless error standard yeah because your argument is the critical stage and that there's no harmless error what in the law that you have argued makes that clear your honor I think this goes to he was denied counsel at a proceedings we have you know a lot of Supreme Court precedent and this court as well follows it I think in Benitez United States versus Benitez where we know that when an individual is denied counsel during critical proceeding which is after indictment after initiation of the adversary proceedings against him that he has the right to counsel and that didn't happen here not only was he not told he didn't have the right to counsel once he was arrested but he wasn't told effectively when he was giving them random warnings either and so he you recall what your opposing counsel relies on as the reason to say that there is an exception for this in this circumstance your honor I'm not quite sure why they think there's an exception I think the solder case might have been what they were referring to of the treatment of maybe constitutional rights being held to a different standard but we know that when it's the Sixth Amendment denial of their right to counsel that is not held to a harmless error standard and in this case it wasn't harmless error when the government relied on those statements at least ten times in their closing arguments I see my time is up okay well thank you very much we appreciate your both counsel and we'll take the matter under submission